UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VANESSA P.,

                Plaintiff,

v.	CASE # 21-cv-00576

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>ELIZABETH A. HAUNGS, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | KRISTINA D. COHN, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff was born on December 22, 1982 and has at least a high school education. (Tr. 150, 158). Generally, plaintiff's alleged disability at the time of application was a neck injury, back pain, leg weakness and depression. (Tr. 149). Her alleged onset date of disability was February 8, 2012, and her date last insured was December 31, 2015. (Tr. 159).

    B.     **Procedural History**

On March 19, 2013, plaintiff protectively applied for a period of Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act and a period of Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging disability beginning on February 8, 2012. (Tr. 126, 132). Plaintiff's applications were denied, after which she timely requested a hearing before an Administrative Law Judge (ALJ). On March 25, 2015, plaintiff appeared before ALJ Eric Glazer. (Tr. 31). On May 22, 2015, ALJ Glazer issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 23). On February 3, 2016, the Appeals Council (AC) denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3). Plaintiff then appealed the unfavorable decision to the United States District Court for the Western District of New York. (Tr. 566, 692-700).

In the interim, on March 21, 2017, plaintiff again applied for DIB and SSI, alleging disability beginning on May 23, 2015. (Tr. 811). Plaintiff's March 21, 2017 applications were denied by Disability Determination Services (DDS) on April 25, 2017, finding that plaintiff was not disabled. (Tr. 691).

By decision and order dated May 2, 2017, the district court remanded plaintiff's case to the agency for further proceedings. (Tr. 692-700). In an order dated October 13, 2017, the Appeals

Council remanded the case to an ALJ for a new administrative hearing, noting that plaintiff had filed a "subsequent claim for Title II and Title XVI disability benefits on March 20, 2017" rendering the subsequent claims duplicate. (Tr. 717).

The next hearing took place on July 26, 2018, before ALJ Melissa Lin Jones, and on September 13, 2018, ALJ Jones issued a decision finding that plaintiff was not disabled between February 8, 2012, the alleged onset date, and September 13, 2018, the date of the ALJ's decision. (Tr. 609, 581-82). Plaintiff appealed the unfavorable decision directly to the United States District Court for the Western District of New York, which again remanded the case on November 20, 2019, pursuant to a stipulation by the parties. (Tr. 1821, 1964).

On September 17, 2018, four days after ALJ Jones' unfavorable decision, plaintiff again filed a subsequent SSI claim. (Tr. 1822). On February 27, 2020, ALJ Dennis G. Katz dismissed her request for a hearing on this SSI claim due to plaintiff's failure to appear, and plaintiff never appealed the order of dismissal. (Tr. 2017-21).

On April 15, 2020, the Appeals Council remanded plaintiff's pending DIB and SSI claims for further proceedings consistent with the district court order. (Tr. 1967-72). In its notice, the Appeals Council noted that plaintiff had not appealed ALJ Katz's dismissal of her request for review. (Tr. 1970). Accordingly, the Appeals Council explained that unless the prior decision was reopened, the ALJ was limited to considering the period prior to September 17, 2018. (Tr. 1970-71).

A hearing on plaintiff's pending DIB and SSI claims was held by telephone, on February 16, 2021, before ALJ Mary Mattimore. (Tr. 1821, 1912-62). On March 16, 2021, ALJ Mattimore issued a decision specifying that plaintiff filed a subsequent SSI claim on September 17, 2018, alleging disability beginning on July 1, 2017, and that an initial determination by DDS on

December 31, 2018 found that she was not disabled. (Tr. 1822, 2016). As such, the ALJ did not find a basis to reopen the prior SSI application and limited the relevant period to prior to September 17, 2018. (Tr. 1823). The ALJ found that plaintiff was not disabled from February 8, 2012 through September 17, 2018. (Tr. 1852-53). Plaintiff again appealed directly to this court.

    C.    **The ALJ's Decision**

Generally, in her decision, ALJ Mattimore made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant did not engage in substantial gainful activity from February 8, 2012, the alleged onset date, through September 17, 2018 (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. Through September 17, 2018, the claimant had the following severe impairments: obesity; hidradenitis suppurativa; degenerative disc disease of the lumbar spine, status post-lumbar discectomy on August 17, 2012, with post-laminectomy syndrome; and migraine headaches (20 CFR 404.1520(c) and 416.920(c)).

4. Through September 17, 2018, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that, through September 17, 2018, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she could frequently push/pull bilaterally. She could occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl. She could never climb ladders, ropes, or scaffolds. She could have no exposure to vibration, unprotected heights, or hazardous machines. She could work in a moderate noise level environment, as defined in appendix D of the Selected Characteristics of Occupations. She could have no exposure to flashing or flickering lights. She was able to perform simple routine work and make simple workplace decisions, not at a production rate pace, defined as an assembly line pace. She required the freedom to alternate positions from seated to standing and vice versa every fifteen minutes, while on task and at the workstation. She required two, five-minute, unscheduled breaks per day, in addition to regularly scheduled breaks and lunch.

6. Through September 17, 2018, the claimant was unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on December 22, 1982 and was 29 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963). The claimant was also 35 years old, which is still defined as a younger individual age 18-44, on September 17, 2018 (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Through September 17, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant was not under a disability, as defined in the Social Security Act, from February 8, 2012, through September 17, 2018 (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 1825-52).

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.     Plaintiff's Argument

Plaintiff advances four arguments in support of her motion. (Dkt. No. 9 [Pl's Mem. of Law]). First, plaintiff argues the ALJ improperly limited the time frame of her Title II claim. Second, plaintiff asserts the ALJ constructively reopened a subsequent Title XVI claim. Next plaintiff contends the ALJ failed to properly evaluate Listing 8.06 for Hidradentitis Suppurativa. Lastly, plaintiff argues the ALJ's highly specific off-task time limitation was not supported by substantial evidence.

### B.     Defendant's Arguments

Defendant responded to each of plaintiff's arguments. (Dkt. No. 10 [Def.'s Mem. of Law]). First, defendant asserts substantial evidence supports the ALJ's decision not to reopen the

subsequent SSI application and it was not constructively reopened. Next, defendant argues the alleged impairments did not meet or equal Listing 8.06 because the evidence did not satisfy the requirements. Defendant also maintains that substantial evidence, including medical opinion evidence, supports the ALJ's unscheduled breaks limitation in the RFC.

### III.  RELEVANT LEGAL STANDARD

#### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV. ANALYSIS

### A. Procedural Issues

Plaintiff argues the ALJ improperly applied *res judicata*[1] to her Title II claim and constructively reopened a subsequent SSI claim. To say the least, the procedural history of this case is complicated but the ALJ appropriately handled the subsequent claim as directed by the Appeals Council. The issues addressed by plaintiff arise from a subsequent SSI claim on September 17, 2018. (Tr. 1822). This claim was dismissed because plaintiff failed to appear for the scheduled hearing and never appealed the order of dismissal. (Tr. 2017-21). When the Appeals Council remanded the pending DIB and SSI claims on April 15, 2020, the notice specified that plaintiff had not appealed the February 2020 dismissal of her request for review. (Tr. 1970). Accordingly, the Appeals Council noted that unless the prior decision was reopened, the ALJ was limited to considering the period prior to September 17, 2018. (Tr. 1970-71).

In the March 2021 decision, ALJ Mattimore painstakingly recited the complex procedural history and noted that plaintiff had filed a subsequent SSI claim on September 17, 2018, alleging disability beginning on July 1, 2017, and that an initial determination by DDS on December 31, 2018, found plaintiff not disabled. (Tr. 1822, 2016). As such, the ALJ did not find a basis to reopen the prior SSI application and limited the relevant period to prior to September 17, 2018. (Tr. 1823).

---

[1] The doctrine of *res judicata* is applied when a prior determination or decision with respect to the same party, facts, and issue(s) has become administratively final, the doctrine of administrative res judicata may be used to dismiss a request for hearing (RH) entirely or to refuse to consider an issue(s) on a subsequent application arising from the same title of the Act. HALLEX I-2-4-40A. This was not the case here as the Title II case was limited to the date last insured and the subsequent SSI case was dismissed for failure to appear.

The ALJ found that Plaintiff was not disabled from February 8, 2012 through September 17, 2018. (Tr. 1852-53).

First, ALJ Mattimore was very clear that she was not reopening the 2018 SSI application nor was it constructively reopened. While the ALJ did admit records submitted by plaintiff from after September 2018, the examination of medical evidence from a prior period is needed to make a determination about a second application where "the ALJ explicitly recognized that his findings addressed only the second application." *Hussain v. Comm'r of Soc. Sec.*, No. 13 Civ. 3691 (AJN) (GWG), 2014 WL 4230585, at *12 (S.D.N.Y. Aug. 27, 2014). Here, the ALJ repeatedly mentioned how records from outside the relevant period were considered. For example, in discussing the weight to assign to the opinion of consultative examiner Dr. Hongbiao Liu from November 13, 2018, while the ALJ assigned some weight to his opinion, she explicitly noted that his opinion was rendered only after the period of adjudication in this decision. (Tr. 1846-47. *See also, e.g.*, Tr. 1830 (noting that the majority of Plaintiff's specialized dermatology treatment took place only after September 17, 2018); Tr. 1839 (in considering treatment notes from September 25, 2018, the ALJ noted that treatment occurred only after the period of adjudication in this decision). Additionally, the ALJ repeatedly referenced that the relevant period under consideration was from February 8, 2012 through September 17, 2018. (*See, e.g.*, Tr. 1823, 1825, 1829, 1852-53).

The regulations are clear that a claimant must request further review of a determination or decision within the stated time period. Plaintiff failed to comply with this regulation. Under 20 C.F.R. §§ 404.987, 416.1487, if a claimant is "dissatisfied with a determination or decision made in the administrative review process, but [does] not request further review within the stated time period," the claimant loses her right to "further review and that determination or decision becomes final." Plaintiff's representative requested the 2018 SSI application be reopened but the only

presented grounds were because of documentation they felt supported the existence of impairments through 2020 and 2021. (*Id*.). None of the arguments being advanced by plaintiff now in her brief were brought up at the hearing. For example, plaintiff dubiously argues both that the Agency should have sent notices of the hearing dismissal to the attorney of record in the other claims but also that the Agency should have a higher duty because plaintiff was not represented for the February 2020 dismissal. (Dkt. No. 9 at 21-22). At the 2021 hearing, the ALJ repeatedly informed plaintiff's representative that the Appeals Council order limited the period and reopening was only warranted if additional development indicated it was appropriate. (Tr. 1916). The ALJ appropriately did not find the conditions for reopening were met.

Second, the ALJ appropriately considered plaintiff's DIB claim and the closed period considering the subsequent 2018 SSI application did not affect it. For plaintiff to receive disability benefits, plaintiff's disability onset date must fall prior to her date last insured. *See* 20 C.F.R. § 404.315(a); *Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir.2008). Here, plaintiff's date last insured was December 31, 2015. (Tr. 569). The period adjudicated by ALJ Mattimore was from February 8, 2012 through September 17, 2018, which clearly covered plaintiff's date last insured.

**B. Listing 8.06**

Plaintiff next argues the ALJ used a narrow definition of the word "extensive" when evaluating the severe impairment Hidradenitis Suppurativa under Listing 8.06. (Dkt. No. 9 at 22-23). Listing 8.06 is as follows:

> Hidradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed. 20 CFR Pt. 404, Subpt. P, App. 1, §8.06.

ALJ Mattimore found there was not evidence that plaintiff's skin lesions interfered with, or seriously limited, the motion of the joints, soles of the feet, or upper or lower extremities as

10

required by the listings. However, the ALJ acknowledged evidence of lesions in the axillae, inguinal, and perineum areas at various times during treatment but not at a listing level. (Tr. 1830, *referring to e.g.*, Tr. 2756-2866 2410-2481, 2557-78, 2581-85, 2627-42.). Plaintiff does not cite evidence that she meets the listing but contends the ALJ's reading of the listing is narrow and claiming medical equivalency without any support or evidence. (Dkt. No. 9 at 23-24). In her lengthy and comprehensive decision, ALJ Mattimore discussed various treatment notes regarding plaintiff's skin lesions and response to treatment. Notably, as the ALJ discussed, the record contains no evidence of any additional dermatology treatment after January 17, 2019, and there was no evidence that plaintiff's skin lesions very seriously limited her extremities. (Tr. 1830, *referring to* Tr. 2756-2866 2410-2481, 2557-78, 2581-85, 2627-42).

Plaintiff additionally argues the ALJ limited the testimony of medical expert Dr. Kendrick as it pertained to Listing 8.06, yet concedes Dr. Kendrick was an orthopedist and it may be unconventional for him to testify about hidradenitis suppurativa, which is a skin condition. (Dkt. No. 9 at 25). Initially Dr. Kendrick testified he did not understand the skin disorder listing, but counsel continued to ask further detailed questions. (Tr. 1941). ALJ Mattimore specifically asked Dr. Kendrick if he was comfortable testifying about the dermatology listing and he responded, "No." (Tr. 1941). The ALJ invited plaintiff's counsel to submit a brief after the hearing to specifically address the listing. (Tr. 1942). To be sure, as noted above and in the ALJ's decision, the treatment notes contained insufficient evidence to establish that plaintiff's lesions resulted in "very serious limitations," as defined in the listing. (Tr. 1830, *referring to* Tr. 2756-2866 2410-2481, 2557-78, 2581-85, 2627-42). Therefore, the ALJ's conclusion that plaintiff's impairment did not meet the severity of a listed impairment was supported by the record.

### C. Off Task Limitations

Finally, plaintiff argues the ALJ's RFC limitations for being off task were unsupported by substantial evidence. (Dkt. No. 9 at 26). In the RFC, the ALJ found plaintiff could perform a range of sedentary work as long as she had "two, five minute, unscheduled breaks per day, in addition to regularly schedule breaks and lunch." (Tr. 1831). Plaintiff argues that the specific time assessments are based on the ALJ's own surmise as there is no identical opinion or medical evidence that mirrors those specific intervals. First, it is well settled by the Second Circuit that an ALJ's decision does not have to be supported by an opinion. *Poupore v. Astrue*, 566 F.3d 306 (2d Cir. 2009); *see Corbiere v. Berryhill* 760 F. App'x 54, 56 (2d Cir. Jan. 23, 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly speaking to the physical portion of the RFC determination of sedentary work, and relying, instead, on the relevant medical findings in the treatment notes). Second, where the record contains sufficient evidence, an ALJ is permitted to make determinations related to severe impairments. *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) (summary order) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.' . . . Here, the treatment notes were in line with the ALJ's RFC determinations.").

While the ALJ's RFC was supported by opinion evidence, it was not identical to any opinion. However, case law has held that an ALJ can craft a highly specific RFC finding absent a medical opinion. *Cook,* 818 F. App'x at 108 (affirming ALJ's RFC determination that did not align with any particular medical opinion); *see also Tracy* R. v. Comm'r of Soc. Sec., No. 6:20-CV-06132 EAW, 2021 WL 2659219, at *9 (W.D.N.Y. June 29, 2021)(affirming where there was no

12

medical source opinion to support 10 percent off task limitation). Here, the ALJ considered the December 18, 2020, opinion of Dr. Aishwarya Ramachandran, which assessed plaintiff could sit for more than two hours at a time, and for about two hours in an eight-hour workday. (Tr. 1845, *referring to* Tr. 2581-85). Dr. Ramachandran also opined that plaintiff could stand for 30 minutes at a time but could stand/walk for less than two hours in an eight-hour workday, and that plaintiff would need a job that allowed her to change positions from sitting, standing, or walking, and that she would need unscheduled breaks during an eight-hour workday. (Tr. 1845-46, *referring to* Tr. 2582-83). The ALJ accordingly assigned the opinion some weight, which the plaintiff does not argue was improper. (Tr. 1845). While the ALJ explains Dr. Ramachadran issued an opinion outside the period at issue, there were no opinions during the period with greater limitations. Notably, the ALJ did not give a limitation with an off-task percentage like the cases cited by plaintiff but rather two additional unscheduled breaks as indicated in Dr. Ramachandran's opinion.

It is worth noting that there was a voluminous record before ALJ Mattimore containing extensive treatment records and opinion evidence. The ALJ dutifully considered all records, including even those outside of the relevant period, to determine the RFC based on all the relevant medical and other evidence of record. 20 C.F.R. §§ 404.1545(c), 416.945(c); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the ultimate responsibility to determine a claimant's RFC rests solely with the ALJ); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs all evidence available to render an RFC finding consistent with the record as a whole) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). Plaintiff cites a plethora of case law pertaining to off-task limitations, but plaintiff has not cited evidence of greater limitations and therefore has failed to satisfy her burden to show she needs a more restrictive RFC. Plaintiff's argument therefore fails because the Second

Circuit has held that the RFC finding "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (internal quotation marks and brackets omitted) (*citing Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

**ACCORDINGLY, it is**

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 10) is

**GRANTED.**

Dated: May 2, 2023  *J. Gregory Wehrman*
Rochester, New York  HON. J. Gregory Wehrman
United States Magistrate Judge